**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Jimmy Dorman COKER,
Defendant-Appellee.**

No. 78–2032.

United States Court of Appeals,
Tenth Circuit.

Submitted on Briefs March 26, 1979.

Decided June 15, 1979.

Julian K. Fite, U. S. Atty., and James E. Edmondson, Asst. U. S. Atty., Muskogee, Okl., for plaintiff-appellant.

Kile, Rabon & Pullin, Hugo, Okl., for defendant-appellee.

Before McWILLIAMS, McKAY and LO-GAN, Circuit Judges.

McKAY, Circuit Judge.

The only issue presented by this appeal is whether the trial court erred in granting defendant's motion to suppress certain evidence seized after a warrantless arrest and warrantless search incident to arrest. The government bears a heavy bur-

den when it seeks to justify warrantless arrests and searches. *See, e. g., Whiteley v. Warden,* 401 U.S. 560, 566, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Chimel v. California,* 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *United States v. Guana-Sanchez,* 484 F.2d 590, 592 (7th Cir. 1973), *cert. dismissed,* 420 U.S. 513, 95 S.Ct. 1344, 43 L.Ed.2d 361 (1975); *United States v. Free,* 141 U.S.App.D.C. 198, 200, 437 F.2d 631, 633 (1970). Following a full evidentiary hearing, the trial court concluded that the government had not met this burden and determined that there was no probable cause for defendant's arrest. In evaluating the correctness of this conclusion, we are bound by the trial court's factual and credibility determinations unless clearly erroneous.[1]

■ The facts as found by the trial court may be briefly stated.[2] Officers had located a marijuana patch in the middle of a remote wildlife refuge. There was a rumor that defendant was intending to harvest the marijuana the evening prior to the day of his arrest.[3] However, as late as that evening there was much conjecture among the officers concerning who was responsible for the cultivation. Officers set up an observation point some distance from the patch on the night before the defendant's arrest. At about midnight defendant was seen in a pickup truck at the crossroads nearest to the marijuana patch, which is some distance from the patch. The truck left the crossroads at a high rate of speed, disappeared from view for a time, and then left the area.

Next morning the officers went to the patch and observed freshly cut marijuana. While gathering it, they heard three shots of unknown origin. Extensive patrolling of the area was then undertaken. Several hours after the shooting incident, other officers patrolling in the general neighborhood of the defendant's home observed a pickup truck. A male passenger took actions to avoid being seen. The truck, which was driven by defendant's wife, was then pulled over and defendant identified by an officer who knew him. Defendant was then taken to the "command post" and held pending arrival of a narcotics officer. The narcotics officer observed that defendant was wet from the waist down and had debris on his person characteristic of the wildlife refuge generally, but by no means distinctive of the marijuana patch in question.[4] The narcotics officer then effected the formal arrest and incident search.

■ The trial court concluded that there was a lack of probable cause for the arrest.[5]

---

1. The trial court did not prepare written findings of fact. However, in ruling from the bench, he carefully and fully outlined the facts as he found them and the significance to be attached to them.

2. It is clear from the trial court's observations on the record that he did not credit all of the testimony offered by the government. There is no basis for disturbing the trial court's credibility conclusions. Our review of the record indicates the judge's resolution of factual disputes was by no means clearly erroneous.

3. An officer received word from one of two "informants" that this was defendant's intent. The trial court declined to regard this information as more than a rumor, since the officer did not know (and had not asked) the source of the informant's information.

   As the court subsequently explained, "there was no revelation as to the source of the informants' information. The Court had no notice as to whether it was just third party gossip, or rumor, or not." Record, vol. 1, at 117. Nor did he find that this information had been independently corroborated.

   In a motion to reconsider, the government offered evidence that the source of the informant's information was the defendant himself. The trial court rejected this proffer after an express finding that there was no good cause shown why that evidence was not produced at the original hearing. Under these circumstances that evidence cannot be properly considered by us. *See McRae v. United States,* 137 U.S. App.D.C. 80, 86, 420 F.2d 1283, 1289 (1969).

4. After recounting the narcotics officer's testimony of debris on defendant, the trial court stated that "there is no testimony that indicates to the Court that the debris that was seen upon the defendant would be characteristic of the marijuana patch area. It could be apparently characteristic of any place in that area." Record, vol. 1, at 112.

5. At what point in time the defendant was placed under "arrest" for purposes of evaluating the existence of probable cause is some-

In light of the burden which the government bore [6] and the presumptions favoring the trial court's resolution of disputed facts, we affirm. There was nothing presented at the suppression hearing which demonstrated a reasonable basis for believing, either at the time defendant was taken into custody or at the time he was formally arrested, that defendant was responsible for cultivating the marijuana patch. If such a basis existed, we agree with the trial court that it is indeed odd that the officers made no attempt to obtain a warrant and arrest defendant at his home earlier in the morning while the general patrolling activities were taking place. Defendant was stopped because he ducked down in the car; he was arrested because he had been seen in the general area of the marijuana patch, because the condition of his person indicated he had been in the general area of the marijuana patch, and because rumor had linked him to the patch. The trial court concluded that the government did not demonstrate any basis for crediting the rumor; nothing linked defendant to the shots that were fired; there was no showing that defendant had cut the marijuana that was discovered at the patch.

In short, at the time of defendant's arrest, there was lacking "facts and circumstances 'sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). Probable cause to arrest defendant was therefore lacking. Inasmuch as the search was incidental to de-fendant's arrest, evidence seized in that search was properly suppressed.

We affirm.

McWILLIAMS, Circuit Judge, dissenting:

I respectfully dissent. If I were writing the majority opinion, I would write as follows:

Jimmy Dorman Coker was charged by indictment with unlawfully possessing marijuana with an intent to distribute it in violation of 21 U.S.C. § 841(a)(1). Defense counsel filed a motion to suppress certain evidence taken from Coker's person and the pick-up truck in which Coker was riding at the time he was arrested. After an evidentiary hearing the trial court granted the motion to suppress on the ground that there was a lack of probable cause for Coker's arrest. Specifically, the trial court suppressed the use at trial of "the hunting vest, pistol, shotgun shells, sleeping bag, block of wood wrapped in nylon, vegetable matter [claimed by the Government to be marijuana found in the hunting vest], matters taken by reason of the arrest." The trial court later refused to reconsider the matter, and the present appeal is pursuant to the provisions of 18 U.S.C. § 3731. In our view, the trial court erred in granting the motion to suppress, and we therefore reverse.

At the evidentiary hearing on the motion to suppress, the Government conceded that Coker was arrested without a warrant, and proceeded to put on evidence to establish that there was probable cause for the arrest of Coker. The Government called four witnesses who testified concerning the events leading up to Coker's arrest. Three witnesses were then called as defense witness-

---

what problematic. It appears that the trial court considered the arrest to have been effected by the narcotics officer, rather than earlier by the officers who stopped the truck in which defendant was riding. The court seems to have determined that defendant's detention by those officers was only "a custodial investigative action." Record, vol. 1, at 111. The officers did not regard it as an arrest.

On the other hand, there was evidence that the officers who stopped the truck did so with guns drawn (there was testimony to the con-trary); testimony that defendant was deprived of his freedom by the officers and for some twenty minutes confined to their patrol car; and circumstances that otherwise indicate the officers' action went beyond a mere custodial investigation and indeed could only be characterized as an arrest.

As we view this case, resolution of this matter is not necessary. We believe probable cause was lacking at either point in time.

**6.** See initial paragraph of opinion.

es. However, we do not regard their testimony as creating a factual dispute on any critical issue. We accordingly reject the suggestion that this is an instance where the trial court disbelieved the Government's witnesses, and chose to give credence to defense witnesses. It is clear to us that the trial court was of the view that the Government's own evidence did not establish probable cause to arrest Coker. We disagree with this conclusion.

Two citizen informants, acting individually and not jointly, informed local authorities that Coker was growing and harvesting marijuana in a field located in a remote and barely accessible area within the Hugo Game Reserve in Pushmataha County, Oklahoma. The personal reliability of both informants was conceded, though their information was based on what they had been told by others. Supplied with this information, the local authorities located the field of marijuana in the precise area described by each of the informants. A surveillance of the field was arranged, and Coker appeared on the scene, not once, but several times during the course of the evening.

We deem it unnecessary to here set out all of the surrounding facts and circumstances surrounding Coker's arrest. Mention should be made of the fact that a second report from one of the informants was to the effect that Coker knew he was then being watched, and that he was determined to harvest his crop and would kill anyone who tried to prevent him from so doing. Coker was initially "detained" the morning after the surveillance, and shortly thereafter was placed under arrest, again in the general vicinity of the marijuana field. At the time Coker was stopped, he was observed to be wet from the waist down * and to be covered with "stickers and seeds." Also, at the time he was stopped, Coker was a passenger in his pick-up truck, which was being driven by his wife. When Coker first saw the patrol vehicle, he tried to slump down in the pick-up and "hide" himself. In short, our reading of the record convinces us that the trial court, on the basis of the record then before it, erred in granting the motion to suppress.

On appeal defense counsel asserts that "[t]his appeal presents a single issue: *At the time of his arrest* were the officers looking for him [Coker] or were they just cruising the country roads looking for people acting suspicious?" (Emphasis added.) We will accept counsel's framing of the issue here to be resolved, and simply state that the record most certainly does *not* show that at the time of Coker's arrest the authorities were just looking for any person who was acting suspiciously. To the contrary, the record clearly shows that they were "looking" for Coker, and that their "looking," and arrest, were based on probable cause.

Counsel suggests that Coker was in reality arrested when he was first stopped by the police, and not some thirty minutes later when he was formally placed under arrest by narcotic officers who were called in. In our view of the matter, it makes little difference as to when the arrest technically occurred, as there was probable cause in any event. Certainly the initial stopping was lawful, as well-founded suspicion justifies an officer's brief detention of a citizen for limited inquiry. *Stone v. Patterson,* 468 F.2d 558 (10th Cir. 1972) and *United States v. Sanchez,* 450 F.2d 525 (10th Cir. 1971). And, in our view, that which developed immediately thereafter ripened quickly into probable cause for an arrest. The ensuing search was incident to this lawful arrest, and, therefore, the motion to suppress should have been denied.

By our disposition of the present matter we are not indicating the ultimate outcome of the trial. Whether the Government can convince the trier of the facts beyond a reasonable doubt that Coker is guilty of the crime charged remains to be seen. We are merely holding that the trial court erred in granting the motion to suppress.

The order granting the motion to suppress is vacated and the cause remanded for further proceedings consonant with this opinion.

---

* There was a river traversing the field of marijuana here in question.

The foregoing sets forth my views on this matter, and it is on this basis that I dissent.