**UNITED STATES of America,
Appellant,**

v.

**John Christopher PAPPAS, Appellee.**

No. 83–1802.

United States Court of Appeals,
Tenth Circuit.

June 8, 1984.

Brent D. Ward, U.S. Atty., Salt Lake City, Utah, for appellant.

Max D. Wheeler, Salt Lake City, Utah (Sam N. Pappas, Salt Lake City, Utah, with him on brief), for appellee.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellee-defendant Pappas was indicted for the possession of an illegal weapon after a sawed-off shotgun was found in his car. The district court ordered the shotgun suppressed as evidence finding that it had been seized in the course of an illegal search. The government appeals under 18 U.S.C. § 3731.

Shortly before midnight on March 1, 1983, police officers from Price City, Utah, responded to a complaint that an unknown person had assaulted a patron of the Matador Club with a firearm. The first officer to arrive, Sgt. Blackburn, noticed four people in the parking lot in front of the bar. He believed one of them, who turned out to be the defendant Pappas, should be watched because his hands could not be seen. He communicated this information to officers Penrod and Nichols who arrived at the scene shortly thereafter. Pappas walked towards his automobile, a Bronco. The evidence was conflicting as to whether Pappas entered the car prior to his arrest. Only the arresting officerr, Nichols, testified that he had done so. Tr. 43, 41, 31, 81, and 85. Officer Nichols ordered Pappas to stop, frisked him, and conducted a limited search of the Bronco, finding a loaded .357 Magnum in the compartment between the front seats. Pappas was placed under arrest. When asked whether she had a charge in mind, Officer Nichols responded, "Loaded firearm in vehicle." Tr. 49. At the time of the arrest Officer Nichols knew that the defendant was not the perpetrator of the assault in the Matador Club. Tr. 61.

Under the Price City Police Department policy which requires the impounding of any vehicle whenever an arrest takes place, regardless of the circumstances, the officers decided to impound the car and began a complete inventory search. After Sgt. Blackburn began searching the car, Officer Dougal, shining a flashlight through the window, saw the butt of a shotgun protruding from under the seat. Tr. 13, 14. The weapon turned out to be a sawed-off shotgun and the defendant was indicted for possession of this illegal weapon. The court granted defendant's motion to suppress, finding that both the initial search and the inventory search violated the defendant's constitutional rights.

▪ At a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence together with the inferences, deductions and conclusions to be drawn from the evidence, are to be determined by the trial judge. *United States v. Donahue*, 10 Cir., 442 F.2d 1315, 1316. The appellate court is bound by the trial court's determinations unless they are clearly erroneous. *United States v. Coker*, 10 Cir., 599 F.2d 950, 951. Where, as here, there are only conclusory findings, we may look to the judge's statements and rulings from the bench to ascertain the trial court's factual findings and credibility determinations. *Coker*, supra, 599 F.2d at 951, n. 1 and 2.

 The protective search of the compartment in defendant's car was reasonable under the principles laid down in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 and reiterated in *Michigan v. Long*, —— U.S. ——, 103 S.Ct. 3469, 3480–3482, 77 L.Ed.2d 1201. A finding that the initial search was justified does not extend to the inventory search of defendant's car. In *Michigan v. Long*, supra, 103 S.Ct. at 3482, the Court remanded the case for determination whether a search of a car's trunk was justified as an inventory search authorized by *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000.

In *Opperman*, 428 U.S. at 368–369, 96 S.Ct. at 3096–3097, the Court said that in connection with "community caretaking functions" automobiles are frequently taken into police custody and subjected to an inventory search. It noted three bases for allowing such a search: to protect the owner's property in police custody; to protect the police against claims of lost or stolen property; and to protect the police from potential danger. *Opperman*, supra, p. 369, 96 S.Ct. at 3097.

In *Opperman*, the owner left the car illegally parked for an extended period and he was not present to make other arrangements. In this case the car was legally parked in a private lot. The defendant had been arrested and taken away.

The government argues that *United States v. Staller*, 5 Cir., 616 F.2d 1284, cert. denied 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89, upholds the impounding and search of a car lawfully left in a parking lot. There the defendant was from out of the state and had no friend or relative available to take care of the car. His traveling companion had been arrested. The officers had reason to believe that the defendant would be separated from his car for an extended period with the hazard that a break-in would be likely. 616 F.2d at 1289–1290.

In the case at bar, the court said, Tr. 119:

"He (Pappas) had a young lady friend with him who went with—who, if asked, might well have been able to take the car and had driven [sic] it to the police station or something of that kind. He had other friends who were there who, if inquired of, might have taken it into custody. There was the owner of the bar who could have been inquired of if it could have been left there until he returned. He is a well known person in the community. His family lives close. A call there could have protected the officers substantially, I would think."

 The trial court correctly held that *Opperman* cannot be used to justify the automatic inventory of every car upon the arrest of its owner. The justifications for the rule are too carefully crafted for this to be the intent. In this case the car was parked on private property and there was no need for the impound and inventory search. The shotgun was properly suppressed.

The government argues that the shotgun was in plain view and, therefore, the defendant had no reasonable expectation of privacy and cannot claim a constitutional right. Officer Dougal looked into the car with his flashlight after the inventory search had begun. He could not tell that the gun was an illegal sawed-off shotgun until he reached inside and pulled it out.

 In *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 the Court said that the question in determining whether evidence is "fruit of the poisonous tree" is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." In this case, the gun would not have been found except for the illegal search.

Affirmed.