**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Esteban ANDAS–GALLARDO, Defendant–Appellant.**

No. 99–4015.

United States Court of Appeals, Tenth Circuit.

Feb. 26, 2001.

Before TACHA, Chief Judge, McKAY and HENRY, Circuit Judges.

## ORDER AND JUDGMENT *

McKAY, Circuit Judge.

After a bench trial, the court found Defendant guilty of two counts of possession with intent to distribute marijuana and cocaine in violation of 21 U.S.C. § 841(a)(1), and one count of carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). On appeal, Defendant challenges the refusal of the court to suppress evidence gathered from his residence and from his vehicle. He also argues that the evidence, even if not suppressed, was insufficient to convict him on the firearm charge.

In early May 1996, Salt Lake City Detective Siebert began investigating Defendant's residence for suspected drug activity. The investigation continued for several months. In November 1996, the detective conducted a so-called "trash cover" of Defendant's garbage placed beside the road for pickup the following morning. The detective took some of the garbage for closer inspection. Defendant's trash contained signs of drug trafficking activity. Consequently, the Detective prepared an affidavit which ul-

timately. formed the basis for a warrant to search Defendant's residence.

Meanwhile, Defendant had also become the focus of an investigation into an aggravated assault that had occurred sometime before the "trash cover." Detective Howell, a member of the City's Metro Gang Unit, participated in this investigation. In mid-November 1996, he learned that police were in the process of obtaining an arrest warrant for Defendant in connection with the aggravated assault. Though no arrest warrant had yet issued, he was told sufficient probable cause existed to arrest Defendant for the aggravated assault. To that end, he was given a police "flier" containing Defendant's picture, home address, vehicle description, license plate number, and other identifying information. R.Supp. I, at 11–13; Magistrate Rep. and Rec., at 4.

In late November 1996, the two detectives joined forces. On the evening of November 27, Detective Howell planned to arrest Defendant at his home in connection with the aggravated assault and secure the area while Detective Siebert and others executed the search warrant obtained in connection with the narcotics investigation. Accordingly, that evening Detective Siebert waited near Defendant's home for him to arrive. Once Defendant arrived, Detective Siebert contacted Detective Howell and other participating law enforcement agents. Before Detective Howell reached Defendant's home to make the arrest, however, Defendant left. Detective Siebert then followed Defendant several blocks until Detective Howell and the other officers caught up, at which time Defendant was pulling into a Movie Buffs parking lot. After parking, Defendant exited

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir.R. 36.3.

his vehicle and walked towards the Movie Buffs entrance. Before Defendant could enter the store, however, Detective Howell called to him and requested that he come over. When Defendant approached, he was arrested.

After placing Defendant in handcuffs, Detective Howell took Defendant's car keys from his pants pocket and gave them to attending officers to conduct an inventory search of the vehicle. At some point, Defendant asked what was going to happen to his car; Detective Howell responded that it would be impounded. Defendant then asked whether he could have some one come and get it instead; Detective Howell denied this request. During the course of the inventory search, police discovered two bags of marijuana on the passenger seat and a loaded handgun situated either between the driver's seat and the console or in the console between the front seats. After discovery of these items, Defendant was transported to the police station and the detectives returned to his residence to execute the search warrant.

Based on evidence obtained from Defendant's home and vehicle, the Government charged him with the instant crimes. Prior to trial, Defendant filed motions to suppress the evidence gathered from his home and his vehicle. He argued that both the "trash cover" giving rise to the warrant to search his residence and the impound and inventory search of his vehicle violated the Fourth Amendment. The magistrate judge handling Defendant's motion to suppress recommended that it be denied. The district court adopted the magistrate judge's Report and Recommendation as its own opinion. After a one-day bench trial and supplemental briefing on the firearm charge, the court found Defendant guilty of all charges.

In reviewing a denial of a motion to suppress, we examine the district court's factual findings for clear error and view all the facts in the light most favorable to the Government; however, we review de novo the court's legal conclusions. *See United States v. Haro–Salcedo,* 107 F.3d 769, 771 (10th Cir.1997).

■ Defendant first claims that the warrantless trash can search was unconstitutional. It is well settled that the Fourth Amendment does not prohibit a warrantless search and seizure of garbage left for collection outside the curtilage of a home. *See California v. Greenwood,* 486 U.S. 35, 39–43, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). Defendant does not dispute this point. Rather, to the extent we understand his brief correctly, he claims the district court erred in finding that the trash was left for pick-up outside the curtilage of the home when the detective seized it. Defendant asserts the trash was located near the residence, inside the curtilage of the home. While the record contains a minor dispute on this point, having reviewed the entire record, we conclude there is ample evidence supporting the district court's factual determination that Defendant's garbage was left for pick-up outside the curtilage of the residence when the detective seized it. The district court did not err in denying Defendant's motion to suppress on that basis.

Defendant next questions the constitutionality of the impoundment and inventory search of his vehicle. This requires a two-part analysis. First, we address the reasonableness of the impoundment, and, if reasonable, we then examine the legitimacy of the inventory search. Defendant asserts that *United States v. Ibarra,* 955 F.2d 1405 (10th Cir.1992), and *United States v. Pappas,* 735 F.2d 1232 (10th Cir. 1984), mandate reversing the district court's ruling that the impoundment was reasonable. Neither case, however, requires that result.

In *Ibarra,* this court was constrained by the clearly erroneous standard of review to uphold the district court's factual findings, which did not support the government's purported justifications for impoundment. 955 F.2d at 1409–10. By contrast, in the instant case, we are presented with district court factual findings that justify impoundment. In *Pappas,* the district court ruled the impoundment was unreasonable based on the facts that the defendant's vehicle was legally parked in a private parking lot and that unpursued, yet readily available, alternatives to impoundment existed. 735 F.2d at 1234. Specifically, the district court found that the defendant's friends were present and might have taken custody of the car if asked, that the defendant's family lived nearby and could have been called, that the vehicle could have been left in the parking lot if the permission of the lot owner had been sought, and that the defendant was well known in the community. *See id.* Under those circumstances, we affirmed the trial court's conclusion that the impoundment was unreasonable.

■ To be sure, the present case contains factual similarities to *Pappas.* The district court found that Defendant's car was legally parked in Movie Buffs' private parking lot relatively near to Defendant's home, Defendant inquired about having someone come take custody of the vehicle, and the vehicle was properly registered and did not pose a public hazard or nuisance. Though relevant, these facts do not automatically compel the conclusion that the impoundment was unreasonable. Cars legally parked in private lots may nevertheless be impounded, *see United States v. Kornegay,* 885 F.2d 713, 716 (10th Cir. 1989), *cert. denied,* 495 U.S. 935, 110 S.Ct. 2179, 109 L.Ed.2d 508 (1990), particularly where, as here, the impounded vehicle bears some relation to the underlying police investigation. *See id.* at 719 (McKay,

J., dissenting). Moreover, the fact that alternatives to impoundment may have existed does not mean impoundment was per se unreasonable. *See Colorado v. Bertine,* 479 U.S. 367, 374, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (" 'The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less restrictive' means.' " (quoting *Illinois v. Lafayette,* 462 U.S. 640, 647, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983)). Thus, we must consider additional facts and the reasonable inferences drawn therefrom.

The district court found that the detective impounded the car pursuant to standard police department procedure to "protect the vehicle and its contents until defendant could take possession of it." Magistrate Rep. and Rec. at 25, 26. The court also found that Defendant did not have anyone present to take custody of his vehicle and there was no evidence suggesting how long it might have taken Defendant's friends or family to do so. Moreover, the court found that there was no evidence indicating how safe Defendant's car would have been if left in the private commercial parking lot. Finally, the court found that the detective knew Defendant was a suspect in an aggravated assault and that he often carried a gun, thus raising the distinct possibility that his vehicle contained a firearm. Based on our review of the record, we cannot say that any of these findings are clearly erroneous. Moreover, as in *Kornegay,* we think it relevant that "the vehicle was not parked on his [Defendant's] property, and the agents had every reason to believe that he would not be returning anytime soon to … [Movie Buffs'] lot to care for it himself," and that "to have left the vehicle in … the parking lot—a lot open to the public—could have subjected it to vandalism or theft." *See* 885 F.2d at 716. Viewing all the evidence in the light most

favorable to the government, we affirm the district court's conclusion that the impoundment was reasonable.

The dissent's cite to *United States v. Duguay*, 93 F.3d 346 (7th Cir.1996), is not persuasive. To the contrary, it provides modest support for the position we have taken here. In *Duguay*, the court held an impoundment unconstitutional where the police seized the car despite the fact that the defendant was only a passenger and either the driver or the defendant's brother, who was a bystander, could have taken custody of the car. *See id.* at 349, 353. However, the court acknowledges in footnote 2 that "impoundments by Illinois police have been affirmed in many circumstances where the arrestee could not provide for the speedy and efficient removal of the car, *such as where the driver is the sole occupant and is legitimately arrested.*" *Id.* at 353 n. 2 (emphasis added). There is no question in the instant case that Defendant was the sole occupant of the vehicle and that he was legitimately arrested prior to the impoundment. Having determined that the impoundment was reasonable, we now must analyze the inventory search.

■ An inventory search of a vehicle is a "well-defined exception to the warrant requirement of the Fourth Amendment." *Bertine*, 479 U.S. at 371; *see also Haro–Salcedo*, 107 F.3d at 772. The inventory search exception is not limitless, however. Inventory searches are reasonable only when conducted according to standardized procedures and for non-investigative purposes. *See Haro–Salcedo*, 107 F.3d at 772–73. In the instant case, the district court found that the inventory search of Defendant's car did not conform to standard procedures. On appeal, the Government does not dispute this finding. We thus agree with the district court that this search could not be justified as an inventory search.

Even though the district court found that the search could not be justified as an inventory search, it nonetheless admitted evidence obtained from Defendant's vehicle based on the inevitable discovery doctrine. *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), establishes that the inevitability of discovering certain evidence through lawful means removes the taint from that evidence even though it was originally discovered by unlawful means. We have repeatedly applied the inevitable discovery doctrine to evidence produced by an improper inventory search where the search was preceded by a lawful impoundment. *See, e.g., Haro–Salcedo*, 107 F.3d at 773–74; *United States v. Horn*, 970 F.2d 728, 732 (1992). *But see Ibarra*, 955 F.2d at 1410 (refusing to apply inevitable discovery doctrine where the preceding impoundment was unlawful). On this point, the material facts of the instant case are indistinguishable from *Haro–Salcedo*. Thus, the district court correctly denied Defendant's motion to suppress.

■ Finally, Defendant challenges the sufficiency of the evidence supporting his § 924(c)(1) conviction. Title 18, section 924(c)(1) of the United States Code imposes a minimum five-year prison sentence on "any person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm." The district court found Defendant guilty of violating this provision based primarily on two pieces of evidence. First, "[t]wo pounds of marijuana were found on the front seat of the vehicle," and second, "[a] gun with a loaded clip in the handle was found in defendant's vehicle, either between the driver's seat and the console or in the console between the front seats." Mem. Dec. and Verd. at 4. Defendant does

not dispute these facts but argues that they are insufficient to prove that he "carried" a firearm or that he did so "during and in relation to" a drug trafficking crime.

When reviewing a challenge to the sufficiency of the evidence in a criminal case, " '[t]he evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, the fact finder may find the defendant guilty beyond a reasonable doubt.' " *United States v. Gay*, 774 F.2d 368, 372 (10th Cir.1985) (quoting *United States v. Yates*, 470 F.2d 968, 970 (10th Cir.1972) (additional citations omitted)).

In *Muscarello v. United States*, 524 U.S. 125, 139, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998), the Supreme Court held that the word "carry," for § 924 purposes, "includes the carrying of a firearm in a vehicle." The evidence is sufficient to support the district court's conclusion that Defendant "carried" a gun under *Muscarello.*

■ Defendant's real quarrel is whether the district court's findings sufficiently prove the "during and in relation to" prong of § 924(c)(1). A review of Tenth Circuit cases, however, reveals that evidence is deemed sufficient in this regard if it shows the defendant's proximity to a firearm during a drug crime. *See, e.g., United States v. Richardson*, 86 F.3d 1537, 1549 (10th Cir.), *cert. denied*, 519 U.S. 1030, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996); *United States v. Baker*, 30 F.3d 1278, 1280 (10th Cir.), *cert. denied*, 513 U.S. 906, 115 S.Ct. 273, 130 L.Ed.2d 190 (1994); *United States v. Harmon*, 996 F.2d 256, 257–59 (10th Cir. 1993); *United States v. Nicholson*, 983 F.2d 983, 990 (10th Cir.1993). The district court's findings regarding proximity therefore suffice to prove the required gun-drug nexus in the instant case. Defendant's

argument that he carried the gun for personal protection does not defeat the inference of a relationship between the gun and the drugs. Indeed, we have encountered and rejected this argument before. As we stated in *Nicholson*, "the fact that defendant carried the weapon for personal protection when engaged in lawful activities does not negate the effect of its presence during illegal narcotics transactions." 983 F.2d at 990. In short, the district court correctly concluded that Defendant carried a firearm "during and in relation to" a drug trafficking crime.

AFFIRMED.

HENRY, Circuit Judge, concurring in part and dissenting in part,

I agree with the majority that the district court did not err in denying the defendant's motion to suppress the evidence found in the trash outside his residence. However, I do not agree that the government established that the impoundment of the defendant's car was reasonable. I would therefore reverse the district court's denial of the motion to suppress on that basis.

As the majority notes, the validity of an impoundment is generally assessed under Fourth Amendment standards of reasonableness. *See United States v. Haro–Salcedo*, 107 F.3d 769, 770–72 (10th Cir.1997). Police may impound vehicles in the interests of public safety and as part of their community caretaking functions. *See South Dakota v. Opperman*, 428 U.S. 364, 368, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In order to comport with the Fourth Amendment, an impoundment must be consistent with the exercise of those functions or supported by probable cause. *See United States v. Duguay*, 93 F.3d 346, 352 (7th Cir.1996) (citing *Opperman*, 428 U.S. at 370 n. 5, 96 S.Ct. 3092) ("An impound-

ment must either be supported by probable cause, or be consistent with the police role as 'caretaker' of the streets and completely unrelated to an ongoing criminal investigation."). It is the government that bears the burden of demonstrating the validity of the impoundment. *See United States v. Ibarra*, 955 F.2d 1405, 1409 (10th Cir.1992).

In assessing the validity of an impoundment, we have considered several factors. In instances in which impoundment was supported by state statute, we have concluded that it was reasonable, *see Haro–Salcedo*, 107 F.3d at 771, but we have reached the opposite conclusion when the government failed to prove that state law authorized the police action, *see Ibarra*, 955 F.2d at 1409. In an instance in which the owner of the car was able to provide for the removal of the vehicle, thereby rendering impoundment unnecessary, we found the police action unreasonable. *See United States v. Pappas*, 735 F.2d 1232, 1234 (10th Cir.1984).

In this case, Detective Howell testified that he made the decision to impound Mr. Andas–Gallardo's car because he had been arrested and because impoundment was necessary to protect the car and its contents. In finding this decision to be reasonable, the district court cited the following factors: (1) there was no evidence in the record as to what steps the video store would have taken to remove the defendant's car from the parking lot; (2) there was no one present at the time of Mr. Andas–Gallardo's arrest who could have taken possession of his car, and there was no indication of how long it would have taken a friend or a family member to take

possession of the car; (3) there was nothing in the record to indicate how safe the car would have been if the police had left it there after arresting Mr. Andas–Gallardo; and, finally (4) Detective Howell knew that Mr. Andas–Gallardo was a suspect in a shooting and often carried a gun with him.

In my view, those factors do not establish that the impoundment was reasonable. As to the first three factors, I agree with the district court's assessment of the record's deficiencies. However, because it is the government that has the burden of proof, those deficiencies should be held against the government rather than the defendant. Thus, it was the government's burden to demonstrate that the steps that the video store would have taken if the car had been left in its parking lot supported its removal by the police. It was also the government's burden to demonstrate that no one was available to remove the car for Mr. Andas–Gallardo and that the car would not have been safe if it had been left in the parking lot. The fact that the record does not contain sufficient evidence as to those matters indicates that the government failed to prove that the impoundment was reasonable.[1]

As to the detectives' suspicion that Mr. Andas–Gallardo's car might have contained a gun, I do not think that the applicable decisions authorize the police to impound a vehicle based on what they suspect it contains. In these circumstances, to allow such a suspicion to justify impoundment would permit law enforcement officials to circumvent the well-established requirements for searching vehicles (i.e., probable cause that it contains contraband or a law-

---

1. Moreover, other evidence in the record suggests that it may have been feasible for someone to have retrieved Mr. Andas–Gallardo's car. Upon questioning from the magistrate judge, Detective Howell stated that the video store was seven to eight blocks from Mr. Andas–Gallardo's residence. *See* Rec. supp. vol. I, at 38. Mr. Andas–Gallardo testified that he asked the detectives about having his car picked up, but there is no indication that they considered this request.

ful arrest of the occupants). *See Colorado v. Bertine,* 479 U.S. 367, 375, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (stating that decisions authorizing impoundment do not "prohibit[ ] the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of *something other than suspicion of evidence of criminal activity*") (emphasis added); *Pappas,* 735 F.2d at 1234 (concluding that *"Opperman* cannot be used to justify the automatic inventory of every car upon the arrest of its owner"); *United States v. Donnes,* 752 F.Supp. 411, 421 (D.Wyo.1990) (stating that "[a]n inventory search of a vehicle is not a weapon to be used by law enforcement to contravene the constitution by nullifying the warrant requirement" and concluding that an impoundment "suggested as an investigatory measure, and on the basis of suspicion of evidence of criminal activity" was unreasonable). Here, the government does not argue that the detectives' suspicion that Mr. Andas–Gallardo's vehicle contained a gun provided them with probable cause. As a result, the lesser degree of suspicion on which the district court relied does not provide justification for the search.

In summary, I agree with the Seventh Circuit that "[t]he decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots." *Duguay,* 93 F.3d at 353. Because the government did not prove that Mr. Andas–Gallardo was unable to provide for such speedy and efficient removal, I would reverse the district court's denial of his motion to suppress on that ground.[2]

**2.** I disagree with the majority that *Duguay* provides modest support for its position. Although the Seventh Circuit noted that, under Illinois law, impoundments have been upheld when the driver was the sole occupant of the car and was legitimately arrested, *see* 93 F.3d at 354 n. 3, it also observed that there must be standardized criteria regarding the circumstances in which a car may be impounded, *see id.* at 351. Accordingly, I do not think we are allowed to rely on the criteria established by Illinois law to justify the impoundment here. Instead, we must assess the justification for impoundment that the Utah law enforcement officers actually offered—that impoundment was necessary to protect Mr. Andas–Gallardo's car and its contents.

Moreover, the Seventh Circuit also observed that impoundments have been affirmed in "circumstances in which the arrestee could not provided for speedy and efficient removal of the car." *Id.* at 354 n. 3. The government did not establish that Mr. Andas–Gallardo was afforded that opportunity.