The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 25, 2021

## 2021COA23

**No. 17CA2132, Peo v Thomas — Constitutional Law — Fourth
Amendment — Searches and Seizures — Motor Vehicles —
Warrantless Search — Community Caretaking Exception —
Exclusionary Rule — Fruit of the Poisonous Tree**

A division of the court of appeals considers the novel question

whether the community caretaking exception to the Fourth

Amendment's warrant requirement permits a police officer to

impound a vehicle whenever the driver is arrested and no one else

is present to take custody of the vehicle. The division concludes

that the answer is "no." Because the prosecution here did not show

that the seizure furthered a valid community caretaking function,

impounding the legally parked vehicle from a residential

neighborhood was unreasonable. The evidence discovered during

the subsequent inventory search of the vehicle was therefore

inadmissible. Accordingly, the division reverses the defendant's

convictions depending on that evidence.

Court of Appeals No. 17CA2132
Jefferson County District Court No. 17CR248
Honorable Lily W. Oeffler, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kyle Christopher Thomas,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE NAVARRO
J. Jones and Yun, JJ., concur

Announced February 25, 2021

Philip J. Weiser, Attorney General, Rebecca A. Adams, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Rachel K. Mercer, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     This case presents the novel question whether the community caretaking exception to the Fourth Amendment's warrant requirement permits a police officer to impound a vehicle whenever the driver is arrested and no one else is present to take custody of the vehicle. We conclude that the answer is "no." Because the prosecution here did not show that the seizure furthered a valid community caretaking function, impounding the legally parked vehicle was unreasonable. The evidence discovered during the subsequent inventory search of the vehicle was therefore inadmissible. As a result, we reverse the judgment of conviction entered against defendant, Kyle Christopher Thomas, and we remand for further proceedings.

## I.     Factual and Procedural History

¶ 2     Around midnight, Arvada Police Officer Brandon Valdez saw a vehicle roll through a stop sign and fail to signal a turn. The officer activated his overhead lights to stop the vehicle, and the vehicle's driver promptly pulled it over to the right-side curb of a residential street. Thomas, the driver and sole occupant, provided his identification and the vehicle's registration to the officer, but Thomas could not produce proof of current insurance. When the

officer checked Thomas's identification, the officer discovered an outstanding warrant for Thomas's arrest for failure to appear in court regarding a "larceny" charge. The officer arrested Thomas.

¶ 3     According to Thomas's later testimony at a motions hearing, he asked the officer if he could call his wife — who co-owned the vehicle and was at their home a few blocks away — to pick up the vehicle. Officer Valdez did not deny that Thomas had made such a request. Instead, the officer testified that *he* did not ask Thomas whether Thomas's wife could retrieve the vehicle because he did not know that Thomas was married. In any event, Thomas's wife was not given the chance to pick up the vehicle from its parking space.

¶ 4     Evidence presented at the hearing showed that the Arvada Police Department had the following policy: "Whenever the driver of a vehicle is arrested, the officer will have the vehicle towed unless a properly licensed driver authorized by the vehicle owner is readily available to take control of the vehicle." As Officer Valdez understood that policy, he was required to tow a vehicle any time the driver was arrested unless a licensed, authorized driver was physically present to take the vehicle. Because Thomas was the only person present, Officer Valdez requested a tow.

¶ 5     To prepare the vehicle for towing, Officer Valdez conducted an inventory search.  He found a handgun, methamphetamine, a knife, and a blackjack.  Based on that evidence, the prosecution charged Thomas with possession of a controlled substance with intent to distribute, three counts of possession of a weapon by a previous offender, and possession of an illegal weapon.[1]

¶ 6     Thomas moved to suppress all evidence discovered during the inventory search as the fruits of an illegal seizure.  As pertinent here, he argued that impounding the vehicle was unreasonable because (1) his wife was only a few blocks away and could have retrieved the vehicle and (2) the vehicle was legally parked on a residential street in his neighborhood, was not blocking any driveway, and was not obstructing traffic.  The prosecution responded that police policy required the officer to tow the vehicle because Thomas had been arrested and no one else was present to take the vehicle.

¶ 7     The district court agreed with the prosecution and denied Thomas's motion to suppress.  The court reasoned that, because an

---

[1] The prosecution also charged Thomas with traffic violations.  He does not challenge those convictions.

arrested person is unable to safeguard their vehicle, Officer Valdez needed to impound it for safekeeping.

¶ 8     Thomas was tried before a jury and convicted as charged.

## II.     Standard of Review and Background Principles

¶ 9     Thomas maintains that the district court erroneously denied his motion to suppress the evidence discovered during the inventory search.  We agree.

### A.     Standard of Review

¶ 10    Review of a district court's order regarding a defendant's motion to suppress involves a mixed question of fact and law. *People v. Allen*, 2019 CO 88, ¶ 13.  We defer to the district court's factual findings if they are supported by competent evidence in the record, but we review de novo the court's application of those facts to the law.  *Id.*

### B.     The Protection Against Unreasonable Seizures

¶ 11    Both the Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution prohibit unreasonable searches and seizures.  *Allen,* ¶ 15.[2]  A warrantless

---

[2] In the district court, Thomas cited both the Federal and the Colorado Constitutions, but he did not argue that the state

search or seizure is presumed unreasonable and thus unconstitutional. *Id.* Because the touchstone of the Fourth Amendment is reasonableness, however, the warrant requirement is subject to several exceptions. *Id.*; *People v. Cattaneo*, 2020 COA 40, ¶ 17. The prosecution bears the burden to prove that an exception to the warrant requirement applies. *Allen*, ¶ 15.

¶ 12 When an officer obtains evidence in violation of the Fourth Amendment, "the exclusionary rule ordinarily bars the prosecution from introducing that evidence against the defendant in a criminal case." *People v. Vaughn*, 2014 CO 71, ¶ 10. The exclusionary rule applies both to illegally obtained evidence and to derivative evidence — often called "fruit of the poisonous tree." *People v. Schoondermark*, 759 P.2d 715, 718 (Colo. 1988) (quoting *Nardone v. United States*, 308 U.S. 338, 340-41 (1939)). Thus, evidence discovered during an otherwise reasonable search ordinarily will be suppressed if the search resulted from an unreasonable seizure.

---

constitution affords him any greater protection in this context. Nor does he develop such an argument on appeal. Therefore, we will treat the federal and state protections against unreasonable seizures as the same. *See People v. Allen*, 2019 CO 88, ¶¶ 15, 18-21 (applying both provisions, without distinguishing them, when assessing the constitutionality of a vehicle seizure).

*See People v. Brown*, 2018 CO 27, ¶¶ 17-18 (*Brown II*) (suppressing evidence discovered during inventory search where the predicate seizure was unreasonable); *People v. Brown*, 2016 COA 150, ¶ 32 (*Brown I*), *aff'd*, *Brown II*.

### C. The Community Caretaking Exception

¶ 13    Under one exception to the warrant requirement, officers may seize and remove vehicles from the streets as part of their administrative community caretaking responsibilities, provided that the seizure conforms to standardized criteria limiting police discretion. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976); *Allen*, ¶ 20; *Brown II*, ¶¶ 8-9. After impounding a vehicle, an officer may search the vehicle to inventory its contents, again provided that the search conforms to standardized criteria limiting police discretion. *Colorado v. Bertine*, 479 U.S. 367, 372 (1987); *Allen*, ¶ 20; *Brown II*, ¶¶ 8-9. Such inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372.

¶ 14    Accordingly, the first question when analyzing the constitutionality of an officer's decision to impound a vehicle is

whether standardized criteria authorized the impoundment. *See Allen*, ¶¶ 20-21 ("[T]he existence of standardized criteria or policies is a necessary condition of the community caretaking exception to the warrant requirement . . . ."). If not, the seizure was unreasonable, and the analysis ends. *See, e.g., id.* at ¶ 21 (finding seizure unreasonable solely because "the People did not present any evidence at the motions hearing to establish that the officers [impounded the vehicle] in accordance with any written or oral standardized criteria or policies"). But the fact that a seizure conforms to standardized criteria is not sufficient to survive Fourth Amendment scrutiny. *Brown II*, ¶ 12; *see also* 3 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 7.3(c), Westlaw (6th ed. database updated Sept. 2020) ("It is nonetheless possible . . . [that] an impoundment regulation could be deemed so irrational as to not fall within what the [*Bertine*] Court there characterized as the requisite 'reasonable police regulations.'").

¶ 15    Rather, even if a seizure complies with standardized criteria, the court must also ask "whether the impoundment and subsequent inventory serve an administrative community

7

caretaking function." *Brown II*, ¶ 12.[3] Valid community caretaking purposes may include the need to remove vehicles that impede traffic or threaten public safety or convenience and the need to protect the vehicle and its contents against vandalism or theft. *See id.* at ¶ 14 (identifying such purposes where the driver was unable to drive his vehicle lawfully because his license was suspended); *see also Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005) (identifying the same purposes in a case involving impoundment from the defendant's driveway).

¶ 16 To determine whether impounding a vehicle furthers some community caretaking purpose, courts should consider the totality of the circumstances, including whether the driver was arrested, the time and location of the arrest, whether the driver could produce proof of ownership, whether a licensed and authorized person was available to take custody of the vehicle, and whether an

---

[3] Because compliance with standardized criteria is not sufficient, in and of itself, to render a seizure of a vehicle reasonable under the Fourth Amendment, we cannot follow *People v. Milligan*, 77 P.3d 771, 776-77 (Colo. App. 2003), which rests on that mistaken premise. *See People v. Garcia*, 251 P.3d 1152, 1162 (Colo. App. 2010) (a division of the court of appeals is not bound to follow another division's ruling).

8

arrested driver could return promptly to the vehicle after posting bail. *See Brown II*, ¶ 13; LaFave, § 7.3(c) ("[I]t would appear that impoundment is generally impermissible where the driver has been arrested for such a minor offense [that the driver's prompt release can be anticipated], at least until it appears that he will be unable to post collateral at the station or other appropriate place and thus will not be in a position to depart promptly with the car.").

### III.   Application

¶ 17    To reiterate, the evidence Thomas sought to suppress was discovered during the police's inventory search of his vehicle following its impoundment. Because the impoundment gives rise to the need for and justification of an inventory search, the threshold inquiry when determining the reasonableness of an inventory search is whether the impoundment of the vehicle was proper. *See State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008).

¶ 18    The record shows that Officer Valdez impounded the vehicle for purely administrative reasons, and the People do not justify the seizure as part of the officer's duty to investigate criminal activity. *Cf. People v. Delacruz*, 2016 CO 76, ¶ 14 (describing a protective search of a car based on reasonable suspicion of criminal activity

9

and suspicion that an occupant may be armed and dangerous); *People v. Zuniga*, 2016 CO 52, ¶ 14 (describing automobile exception based on probable cause that the vehicle contains evidence of a crime). Therefore, the dispositive issue is whether the prosecution carried its burden to prove that the officer's decision to impound Thomas's vehicle was a reasonable seizure under the community caretaking exception. Because the prosecution provided no evidence that the seizure furthered some community caretaking purpose beyond the officer's compliance with his department's procedure, we conclude the prosecution did not carry its burden.[4]

¶ 19     Turning first to the interest in public safety and convenience, we note that officers may reasonably remove vehicles that are hazardous or disabled, that are parked illegally, that are blocking access to private property, or that are obstructing traffic on public

---

[4] Thomas argues that Officer Valdez did not follow the police department's policy when he impounded the vehicle because Thomas's wife was available to promptly pick up the vehicle. Thomas also argues that the department's policy did not place meaningful limits on Officer Valdez's discretion. We do not address those contentions because we agree with Thomas that the vehicle's removal did not further any community caretaking function.

10

roads. *See Opperman*, 428 U.S. at 368-69 (listing circumstances justifying removing a vehicle); *Pineda v. People*, 230 P.3d 1181, 1186 (Colo. 2010) (holding that officers reasonably removed a vehicle from the right-hand lane of a busy avenue after arresting the driver because "[n]o one was present to take possession of the vehicle, and the officers could not leave it blocking traffic"), *disapproved on other grounds by Vaughn,* ¶ 14; *see also, e.g., United States v. Rodriguez-Morales*, 929 F.2d 780, 785 (1st Cir. 1991) (expressing similar rationale).

¶ 20    The evidence presented at the suppression hearing, however, showed that Thomas's vehicle was legally parked on a residential street. The evidence did not show that the street was busy, that the vehicle was obstructing traffic, that it was dangerous or disabled, or that it was blocking any driveway. The prosecution presented no evidence that it was illegal, hazardous, or even unusual to leave a vehicle parked in that location. Without such evidence, the prosecution did not demonstrate any interest in public safety or convenience that justified removing Thomas's vehicle. *See Brown II,* ¶ 16 (finding impoundment unreasonable, in part because "[t]here was no suggestion that the car was impeding traffic or threatening

public safety and convenience where it was stopped"); *United States v. Cervantes*, 703 F.3d 1135, 1141-42 (9th Cir. 2012) (concluding that community caretaking exception did not permit impounding a vehicle where the driver "appropriately pulled over to the curb when he was stopped in a residential neighborhood," and the vehicle was parked legally and did not pose a safety hazard); *cf. People v. Camarigg*, 2017 COA 115M, ¶ 21 (holding that impounding a parked vehicle was reasonable because "it was blocking a gas pump and likely to be a nuisance").

¶ 21    Next, the People contend that Officer Valdez needed to impound the vehicle to protect the vehicle "against danger or loss, or even false claims of loss" — even if it posed no threat to public safety and convenience. The People reference a discussion in *Bertine* in which the Court explained that *inventory searches* serve to protect an owner's property "*while it is in the custody of the police*," to insure against claims of lost, stolen, or vandalized property and to guard the police from any danger posed by the vehicle and its contents. 479 U.S. at 372-73 (emphasis added); *id.* at 373 ("[T]he police were potentially responsible for the property taken into their custody."); *see also Brown II*, ¶ 8; *Pineda*, 230 P.3d

12

at 1185.  The Court did not hold that protecting a vehicle against loss or protecting the police from danger posed by the vehicle justifies impounding the vehicle (i.e., taking it into police custody). Instead, the Court upheld the impoundment there because the police's decision was guided by standardized criteria "related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it."  *Bertine*, 479 U.S. at 375-76.

¶ 22     Nevertheless, our supreme court in *Brown II*, ¶ 8, and *Allen*, ¶ 19 — without distinguishing between seizures and inventory searches conducted pursuant to a community caretaking function — recently indicated that police may impound a vehicle to protect against danger, loss, and false claims of loss.  Therefore, we must consider whether Officer Valdez was justified in impounding Thomas's car to protect it from theft or vandalism.

¶ 23     The People imply that impoundment for safekeeping is permissible any time the arrest of the driver would otherwise result in a lawfully parked vehicle being left unattended, regardless of any remaining circumstances.  We are not persuaded.  *Cf. United States v. Sanders*, 796 F.3d 1241, 1245 (10th Cir. 2015) ("*Opperman*

13

'cannot be used to justify the automatic inventory of every car upon the arrest of its owner.'") (citation omitted).

¶ 24    The People identify no case holding that the police may always remove a lawfully parked vehicle for safekeeping whenever it would otherwise be left unattended.  To the contrary, courts have recognized that "[t]he mere fact that [the] defendant's vehicle would have been left unattended is insufficient to justify its impoundment."  *People v. Spencer*, 948 N.E.2d 196, 205 (Ill. App. Ct. 2011); *see State v. Fortune*, 689 P.2d 1196, 1203 (Kan. 1984) ("If the person responsible for the vehicle desires that the vehicle be left lawfully parked upon the streets or that it be turned over to some other person's custody, then, absent some other lawful reason for impounding the vehicle, his or her wishes must be followed."); *Manalansan v. State*, 415 A.2d 308, 310-11 (Md. Ct. Spec. App. 1980) (holding that the decision to impound the automobile was unreasonable where there was no indication that "when the appellant was arrested from his automobile that his automobile was not then at rest in a legitimate parking spot"); *State v. McDaniel*, 383 A.2d 1174, 1179 (N.J. Super. Ct. App. Div. 1978) ("The common theme underlying these cases and others . . . is that

14

something more must be shown to justify impoundment of a car than that it would otherwise be left unattended.").

¶ 25 Consistent with *Brown II*, courts consider whether the totality of the circumstances demonstrates some appreciable risk that the vehicle would be vulnerable to vandalism or theft if it were left where it was parked, or whether some other factors support impoundment. *See Brown II*, ¶¶ 13-14; *see, e.g., United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980) (impounding a lawfully parked vehicle was reasonable where "the officers were aware that a car parked overnight in a mall parking lot runs an appreciable risk of vandalism or theft"); *United States v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005) (impoundment was reasonable where the officer's concerns about vandalism were reasonable, the vehicle was obstructing traffic, and the officer had probable cause to believe it contained illegal drugs); *United States v. Andas-Gallardo*, 3 F. App'x 959, 963 (10th Cir. 2001) (impoundment reasonable where (1) there was no evidence suggesting how long it might take the defendant or a family member to retrieve the vehicle from a private commercial lot; (2) there was no evidence indicating how safe the vehicle would be if left unattended; and (3) there was the "distinct possibility" that

15

it contained a firearm); *Rodriguez-Morales*, 929 F.2d at 785 (removing a vehicle from the shoulder of a busy highway was reasonable because it "would have been easy prey for vandals" and "would have posed a safety threat").[5]

¶ 26    Indeed, regardless of whether the driver was arrested or cited, courts regularly reject the safekeeping rationale for removing a vehicle if the prosecution presented no particularized evidence that the vehicle would be vulnerable to vandalism or theft in its current location.  *See, e.g.*, *United States v. Del Rosario*, 968 F.3d 123, 127 (1st Cir. 2020) ("No evidence suggests personal property was visible inside the car, and the officers do not claim that the car faced any greater threat than that faced by any other car lawfully parked in the neighborhood."); *Cervantes*, 703 F.3d at 1141-42 ("[T]he government presented no evidence that the vehicle would be vulnerable to vandalism or theft if it were left in its residential location, or that it posed a safety hazard, and thus failed to meet its burden to show that the community caretaking exception applied."); *Commonwealth v. Brinson*, 800 N.E.2d 1032, 1037-38 (Mass. 2003)

---

[5] We mention these particular cases because the People rely on them in their answer brief.

("[U]nder a community caretaking analysis, impoundment of lawfully parked cars requires a showing of likelihood of threat or vandalism. There was no such showing here.") (citation omitted); *State v. Slockbower*, 397 A.2d 1050, 1055 (N.J. 1979) ("When the instant defendant was apprehended, there appears by contrast to have been no reason why defendant could not have been permitted to park his car properly and lock it, just as he would have done if he had had any business in the neighborhood.").

¶ 27     We agree with those courts from other jurisdictions that require particularized evidence of a likelihood of vandalism or theft to justify impounding the vehicle for safekeeping. Where officers can identify no reason to believe that the vehicle would be at unusual risk of vandalism or theft if it were left where it was parked, assuming the care and control of the vehicle and its contents "could only increase the risk of liability." *United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996) (noting that "there is no tort for omission by state actors" with regard to protecting property from private injury); *see Brown I*, ¶ 24 ("Stated in the simplest terms, '[t]he state owes no legal duty to protect things outside its custody from private injury.'" (quoting *Duguay*, 93 F.3d at 353)).

¶ 28    Here, the People justify the need to protect the vehicle on the sole basis that the vehicle would be left unattended at night. But the prosecution below presented no evidence that the vehicle's location in the residential neighborhood (six blocks from Thomas's home) made it vulnerable to vandalism. That is, the prosecution presented no evidence that parking a vehicle overnight in that location created an appreciable risk of vandalism or theft, or that Thomas's arresting offense would cause the vehicle to remain unattended for an extended period of time before he could post bail. Indeed, the evidence presented at the hearing suggested that the vehicle would not have been left unattended for long because Thomas's wife, the co-owner, was only a short distance away and could have taken custody of it.[6] *Cf. Andas-Gallardo*, 3 F. App'x at 963 (impoundment reasonable where, among other things, there was no evidence suggesting how long it might take the defendant or his family to retrieve the vehicle). Finally, the prosecution

---

[6] We do not suggest that Officer Valdez was required to wait with the vehicle until Thomas's wife appeared. We note merely that the officer had reason to believe that the vehicle would not be left unattended for long if he simply left it locked and legally parked. It appears that the only reason the officer did not do so was his attempt to comply with the department's impound policy.

presented no evidence that any peculiar characteristics such as broken windows or plainly visible valuables made the vehicle a tempting target for thieves. In any event, Thomas provided proof of ownership and testified that he asked the officer to allow him to call his wife to retrieve the vehicle from where it was parked, thereby assuming the risk of vandalism and theft if his wife did not do so.

¶ 29 Given all this, we conclude that the prosecution failed to demonstrate that it was necessary to seize the vehicle to protect it against loss. Rather, the record indicates that Thomas could have safeguarded his vehicle in the same manner as any person who legally parks a vehicle in a residential neighborhood — by locking it until he or his wife retrieved the vehicle.

¶ 30 Finally, we address the People's argument that the officer needed to impound the vehicle because Thomas did not provide proof of current insurance and the vehicle could not lawfully be operated without valid insurance. *See* § 42-4-1409(1), C.R.S. 2020 (providing that no person shall operate an uninsured motor vehicle). We reject this argument for two reasons.

¶ 31 First, the prosecution offered no evidence of standardized criteria or policies requiring (or permitting) officers to impound

uninsured vehicles. *See Allen*, ¶¶ 8, 21 (concluding that the seizure of a car due to the lack of proof of insurance was unreasonable where the prosecution did not present evidence that the seizure was done in accordance with standardized criteria or policies). Second, our supreme court in *Brown II*, ¶ 13, rejected a similar argument where the defendant could not lawfully remove the vehicle because his license had been suspended. After noting that the power to impound a vehicle pursuant to community caretaking responsibilities is distinct from the power to investigate illegal activity, the court held, "[a]lthough the officers may have reason to suspect that the driver will unlawfully drive the vehicle upon their departure, the community caretaking exception . . . cannot support seizures on the basis of suspicion that the driver has committed, is committing, or will commit a crime." *Brown II*, ¶ 15; *see also People v. Quick*, 2018 CO 28, ¶ 8 (same). Likewise here, the officer could not impound the vehicle solely on the suspicion that Thomas or someone else would later operate it without insurance.

¶ 32     In sum, because neither the safekeeping rationale nor any other community caretaking function applied here, the prosecution failed to meet its burden to prove that the seizure of Thomas's

vehicle fell within the community caretaking exception to the Fourth Amendment's warrant requirement. Accordingly, the seizure was unreasonable, and the fruits of the subsequent inventory search should have been suppressed. *See Brown II*, ¶ 17. Given that the People offer no argument that admitting the contested evidence was harmless, we reverse. *See Hagos v. People*, 2012 CO 63, ¶ 11 (holding that the People bear the burden of establishing that an error of constitutional magnitude was harmless beyond a reasonable doubt).

## IV.  Conclusion

¶ 33    The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.[7]

JUDGE J. JONES and JUDGE YUN concur.

---

[7] Those portions of the judgment not challenged on appeal — Thomas's convictions for failure to stop a vehicle at a stop sign, turning without signaling, and failure to display proof of insurance — remain undisturbed.